UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

UNITED STATES OF AMERICA,          )
                                   )
          Plaintiff,               )          No. 5:11-CR-115-KKC-REW
                                   )
v.                                 )
                                   )          RECOMMENDED DISPOSITION
LATASHA RANKIN,                    )
                                   )
          Defendant.               )

\*\*\*   \*\*\*   \*\*\*   \*\*\*

The Court, on referral, *see* DE #86, considers reported violations of supervised release conditions by Defendant, Latasha Rankin. This District originally convicted Defendant for conspiring to distribute oxycodone, a Schedule II controlled substance, a violation of 21 U.S.C. § 841(a)(1), all in violation of 21 U.S.C. § 846. The District Judge sentenced Rankin to 15 months of imprisonment, later reduced to 12 months and 1 day of imprisonment, followed by 3 years of supervised release. Rankin began her supervised release term on March 15, 2013.

The United States Probation Office (USPO) issued a Supervised Release Violation Report on June 25, 2014, and secured a warrant from the District Judge the same day. DE #85 (Order). Defendant appeared for initial proceedings under Federal Rule of Criminal Procedure 32.1 on July 2, 2014. DE #87 (Minute Entry).

At a final hearing, Defendant competently entered a knowing, voluntary, and intelligent stipulation to all of the Report's charges, after the Court afforded Rankin all rights due under Rule

1

32.1 and 18 U.S.C. § 3583.[1]  The parties offered a non-binding recommendation as part of the stipulation. USPO O'Brien spoke in open court without objection.

The Report alleges that, on June 18, 2014, Rankin submitted a urine sample that tested positive for suboxone and benzodiazepines. Rankin denied use, and the USPO sent the test results to Alere Laboratories. Alere confirmed the positive suboxone result. Additionally, the Report charges that Rankin's suboxone use is the equivalent of possession, and thus, on this record, felony conduct (per 21 U.S.C. § 844(a)).

At the final Rule 32.1 hearing, Rankin validly stipulated to both of the violations, a stipulation the lab report substantiates. The conduct confessed would violate the Judgment's restriction against controlled substance use and committing additional crime. DE #71 (Amended Judgment). Defendant stipulated that, in the supervised-release context, each violation occurred as described. The stipulation and record, including the lab-verified test results appended to the Report, establish the violative conduct under Rule 32.1 and § 3583.

The Court also heard argument as to sentence from both sides. Rankin declined to allocute.

The Court has evaluated the full record, including the Report packet and sentencing

---

[1] At the initial appearance, the Court offered a Rule 32.1 preliminary hearing, which Defendant competently waived. DE #87 (Minute Entry). The Court, upon referral from the District Judge, thus set and conducted a final hearing. Rankin validly stipulated to the content of the Report, and the Court offered the parties the opportunity to present any proof and make any argument concerning the proper disposition of the matter. The Court also expressly informed Defendant of her right of allocution before the District Judge.

At the initial appearance, the Court also considered interim detention. The United States sought detention, and Rankin did not advocate for release. The Court remanded Defendant for failing to meet her burden under Rule 32.1(a)(6). Rankin did not establish, by clear and convincing evidence, that she would not flee or pose a danger if released during the interim

2

materials from the underlying Judgment in this District. The Court has considered all of the § 3553 factors imported into the § 3583(e)(3) analysis.

Under § 3583, a defendant's maximum penalty for a supervised release violation[2] hinges on the gravity of the underlying offense of conviction. Rankin's Title 21 conviction is for a Class C felony. 21 U.S.C. § 841(c)(2) (version in effect in 2012); 18 U.S.C. § 3559. For a Class C felony, the maximum revocation sentence provided under § 3583 is two (2) years of imprisonment. 18 U.S.C. § 3583(e)(3). The Policy Statements in Chapter 7 of the Guidelines provide advisory imprisonment ranges for revocation premised on criminal history (at the time of original sentencing) and the "grade" of the particular violation proven. *See United States v. Perez-Arellano*, 212 F. App'x. 436, 438-439 (6th Cir. 2007) ("Although the policy statements found in Chapter Seven of the United States Sentencing Guidelines recommend ranges of imprisonment, U.S.S.G. § 7B1.4, such statements 'are merely advisory' and need only be considered by the district court before sentence is imposed.") (citation omitted). Under § 7B1.1(a)(2), the nature of Defendant's admitted conduct would qualify as a Grade B violation.[3] With a criminal history category of I (the category at the time of the conviction) and a Grade B violation, Defendant's range, under the Revocation Table of Chapter 7, is 4-10 months.

A court also may reimpose supervised release, following revocation, for a maximum

---

period. *Id.*

[2] The proof standard is a preponderance of the evidence, *see* 18 U.S.C. § 3583(e)(3), which Defendant's stipulation and the proffered corroborating evidence (including the USPO Report and appended lab results) obviously satisfy.

[3] This is because the Sixth Circuit deems use the equivalent of possession. *United States v. Metcalf*, 292 Fed. App'x 447, 450 n.2 (6th Cir. 2008) (citing *United States v. Hancox*, 49 F.3d 223, 224 (6th Cir. 1995)). Suboxone possession under § 844(a) would be a felony given Rankin's prior § 841 conviction.

period that usually subtracts any term of incarceration actually imposed due to the violation. *See* 18 U.S.C. § 3583(b) & (h). The post-revocation cap depends on the "term of supervised release authorized by statute for the offense that resulted in the original term of supervised release." *See* 18 U.S.C. § 3583(h). The general supervision-term limits of § 3583(b) apply "[e]xcept as otherwise provided." *See id.* § 3583(b). In this instance, the potential reimposed supervised release term is uncapped since Rankin faced a mandatory supervised release term and possible lifetime period under the § 841(b)(1)(C) conviction. *See* 18 U.S.C. § 3583(b) & (h).

The Court has carefully weighed the nature and circumstances of the offense[4] and Defendant's particular history and characteristics. Rankin now fully admits to improper use of a controlled substance during her term of supervised release, as confirmed by the positive drug screen in June 2014. This is not Rankin's first positive drug screen while on supervision. In March 2014, Rankin tested positive for oxycodone, suboxone, and barbiturates. Rankin completed a 30-day treatment program on May 6, 2014. She has again tested positive for suboxone (a Schedule III controlled substance) within approximately 6 weeks of treatment. Earlier in this case, and post-rearraignment but pre-sentencing, the Court revoked Defendant's bond due to a positive drug screen. Thus, Rankin has exhibited a pattern of continued drug use despite USPO monitoring, treatment, and Court oversight. Rankin's persistent drug use, despite sentencing breaks from this Court and a prior treatment opportunity, indicates a dire need to get Rankin's

---

[4] The Guidelines suggest that the *primary* wrong in the supervised release context is violation of the Court's trust by an offender; the particular conduct is an important but secondary issue. *See* Guidelines 7 Pt. A(3)(b) ("[A]t revocation the court should sanction primarily the defendant's breach of trust, while taking into account, to a limited degree, the seriousness of the underlying violation and the criminal history of the violator."). This observation does not detract from but rather shapes the Court's analysis of the statutory factor encompassing offense conduct.

attention now, before the pattern further escalates and Rankin's young life further deteriorates. Complicating the analysis is Defendant's pregnancy. The Court thus also accounts for the health and well-being of her unborn child. Defendant needs both correction, treatment, and an opportunity for a sustained period of sobriety. The Court designs a punishment that provides the opportunity to achieve these goals and to provide her baby with a positive start in life, at least one as positive as the circumstances permit.

Per the USPO Report, and Defendant's stipulation, the Court, therefore, finds that Rankin has violated two separate conditions of supervised release for a total of two violative acts. As described above, Rankin shows a pattern of resisting the Court's instructions and engaging in prohibited and dangerous (felony drug use) behavior without deterrence from or responsiveness to USPO supervision.

The Court recommends, based on the violations found:

1.  Revocation[5] and incarceration for a term of **7 months**, with Defendant to receive credit for all time in custody since execution of the warrant pertaining to this matter. The Court recommends that Defendant be designated to and otherwise participate in the BOP's MINT program. The Court further recommends that, due to the high-risk nature of the pregnancy, the BOP designate Rankin to FMC Lexington pending admission and transfer to a MINT program/facility. All designations should occur as **promptly** as possible.

---

[5] Rankin offered nothing that would justify any revocation exception under § 3583(d). The defense did not advocate for an exception from § 3583(g) mandatory detention. The seriousness of Rankin's addiction, as demonstrated by use within 2 months of completing a 30-day treatment program, signifies that the mandate should apply.

3.      Thereafter, Rankin shall immediately commence supervised release for a term of 18 additional months. The release terms shall be those previously imposed by Judge Caldwell. Additionally, during the balance of supervision, Rankin may only travel to Garrard County for reasons related to the care, custody, or legal status of her children (to include her unborn child). Defendant may not travel to or otherwise voluntarily be in Garrard County for any other reason, to include purely social reasons.

After consideration of the entirety of Chapter 7, and applying the binding statutory factors in § 3553, the Court views the recommended sentence as sufficient but not greater than necessary to effectuate and comply with the statute's purposes. The Court carefully took the views of the United States and defense into account in reaching this result, and the revocation term reflects an effort to awaken Defendant to her legal obligations while giving her access to treatment and protecting her unborn child. The result is within the Guideline range and is a reasonable result that honors the sentencing factors. Further, Defendant's record, history, and vulnerabilities require a suitable period of post-revocation supervision.

Defendant tendered a waiver of allocution at the final revocation hearing, which the Court has filed. Absent revocation of that waiver, which must accompany any objection, the District Judge will not set the matter for a hearing to include allocution.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of the statute. *See also* 18 U.S.C. § 3401(i). By agreement, the Court shortened the objection period. **By July 10, 2014**, any party may serve and file written objections to any or all portions for consideration, de novo, by the District Court.

Failure to make timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981); *Thomas v. Arn*, 106 S. Ct. 466 (1985).

This the 9th day of July, 2014.

Signed By:

*Robert E. Wier*

**United States Magistrate Judge**